# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE HOOSMAN, on behalf of C.W., her Minor Child,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 16-CV-02028-LTS<br><br>**REPORT AND RECOMMENDATION** |

_____

The claimant, Stephanie Hoosman, on behalf of her minor child, C.W., (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I.    BACKGROUND

Claimant was born in August 2002, and was 8 years old on March 1, 2011, the date of the alleged onset of his disability. (AR 16, 125). At the time of the ALJ's hearing on May 27, 2014, claimant was 11 years old and in the sixth grade. (AR 438).

On March 17, 2011, Stephanie Hoosman applied for disability on behalf of claimant, her son. (AR 16, 125, 436). On January 27, 2012, the Commissioner denied claimant's application initially, and on December 12, 2012, denied the application upon reconsideration. (AR 16). On May 27, 2014, an ALJ held a hearing at which claimant

and his mother testified. AR 434-52. On August 8, 2014, the ALJ found claimant was not disabled. On February 11, 2016, the Appeals Council denied claimant's request for review. (AR 1-5). The ALJ's decision, thus, became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On April 13, 2016, claimant filed a complaint in this Court. (Doc. 3). The parties have briefed the issues, and on December 12, 2016, the Honorable Leonard T. Strand, U.S. District Court Judge, referred this case to me for a Report and Recommendation. For the reasons that follow, I respectfully recommend the Court affirm the Commissioner's decision.

## II. DISABILITY DETERMINATIONS FOR MINORS

To determine whether a minor claimant has a disability within the meaning of the Act, the Commissioner follows a three-step sequential evaluation process outlined in the regulations. *See* 20 C.F.R. § 416.924. First, the Commissioner will determine if the minor has engaged in substantial gainful activity; if so, then the claimant is not disabled. If the minor claimant meets this threshold requirement and is not engaged in substantial gainful activity, the ALJ must next consider whether the minor claimant's impairment or combination of impairments is "severe." If so, the ALJ determines whether the minor claimant's impairments meet, medically equal, or functionally equal, a listed impairment set out in Appendix 1 of 20 C.F.R. Part 404, Subpart P. A minor claimant shall be considered disabled for the purposes of SSI benefits if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[1] *See* 42

---

[1] The Supreme Court held the disability, and not only an impairment, has to last for a continuous period of not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212, 218–20 (2002).

2

U.S.C. § 1382c(a)(3)(C)(i). *See Garrett v. Barnett*, 366 F.3d 643, 646–647 (8th Cir. 2004) (setting for the analytical framework).

Thus, at stage three for a minor claimant to be "disabled" within the meaning of the Act, the minor claimant's impairments must meet or medically equal, or functionally equal, a listed impairment. *See* 20 C.F.R. § 416.924(d); SSR 09-2p, 2009 WL 396032 (Feb. 18, 2009). The requirements to functionally equal are described in 20 C.F.R. § 416.926a(a) as "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. §§ 416.925(b)(ii), 416.926a(a); SSR 09-2p, 2009 WL 396032 (Feb. 18, 2009). The Commissioner analyzes functional limitations in six domains: 1) Acquiring and using information; 2) Attending and completing tasks; 3) Interacting and relating with others; 4) Moving about and manipulating objects; 5) Caring for yourself; and 6) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)–(vi). *See also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n.4 (8th Cir. 2005).

A "marked limitation" means the child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *See* C.F.R. § 416.926a(e)(2). A "marked limitation" also means:

(1) A limitation that is "more than moderate" but "less than extreme";
(2) The equivalent of functioning that would be expected or standardized testing with scores that are at least two, but less than three, standard deviations below the mean;
(3) A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score; or
(4) For the domain of health and physical well-being, frequent episodes of illnesses because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur: (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times in a year or once every 4 months, but not lasting for 2 weeks; or (c) less often than

an average of 3 times a year or once every 4 months but lasting no longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. 416.926a(e)(2).

An "extreme limitation" means the child's impairment "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(3). An extreme limitation also means:

(1) A limitation that is "more than marked";
(2) The equivalent of functioning that would be expected on standardized testing with equivalent scores that are at least three standard deviations below the mean;
(3) A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score; or
(4) For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

20 C.F.R. §416.926a(e)(3).

### III. THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing

two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648

F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## IV. THE ALJ'S FINDINGS

The ALJ engaged in the three-step sequential analysis outlined above, as reflected in his written decision.

At Step One, the ALJ found claimant had not been engaged in substantial gainful activity. (AR 19).

At Step Two, the ALJ determined that claimant had two severe impairments: attention-deficit hyperactivity disorder ("ADHD") and dyslexia. *Id*. The ALJ found these impairments were severe because they caused less than marked limitations in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving and manipulating objects, and caring for himself. *Id*.

At Step Three, the ALJ concluded that claimant did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. *Id*.

The ALJ concluded, therefore, that claimant was not disabled from March 17, 2011, the date of the application, to August 8, 2014, the date of the ALJ's decision. (AR 30).

## V. DISCUSSION

Claimant alleges the ALJ committed reversible error in two ways:

1. The ALJ failed to find claimant's other impairments were severe. (Doc. 15, at 5–6).

2. The ALJ failed to find claimant had a marked or extreme limitation in three of the six domains:

(a) attending and completing tasks (Doc. 15, at 6–13);
(b) acquiring and using information (Doc. 15, at 13–18);
(c) moving about and manipulating objects (Doc. 15, at 18–20).

I will address each of these issues in turn.

### A. *Whether the ALJ erred in failing to find other severe impairments*

Claimant argues that he "has a number of severe impairments, besides ADHD and dyslexia" and that the ALJ erred in failing to find these other impairments were severe. (Doc. 15, at 5). Specifically, claimant argues that various medical professionals diagnosed him at different times with the following disorders: left hemisphericity[2]; nonallopathic lesions of his cervical, thoracic, lumbar, sacral, and pelvic regions; anxiety disorder; cognitive disorder, not otherwise specified; nonverbal learning disorder; coordination disorder, and dyscalculia. (Doc. 15, at 5–6). Claimant faults the ALJ for failing to explain why he did not find these additional impairments to be severe, and argues the error is not harmless because "it is now impossible to tell what limitations the ALJ would have imposed had he properly" found these impairments to be severe. (Doc. 15, at 6).

The Commissioner counters that a mere diagnosis does not make an impairment severe. (Doc. 16, at 7). In any event, the Commissioner argues the ALJ's failure to find that a particular impairment was "severe" does not constitute reversible error so long as the ALJ found that at least one other impairment was severe. (Doc. 16, at 6). The Commissioner argues that Step Two is "designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition

---

[2] Hemisphericity refers to cognitive processing that is linked to predominant activity of either their left or right cerebral hemisphere.

of disability' . . .." (Doc. 16, at 7) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987)).[3]

The Court need not determine whether claimant's alleged additional impairments were severe based on mere diagnosis because any error was harmless. "Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process." *Faint v. Colvin*, 26 F. Supp.3d 896, 910 (E.D. Mo. 2014). Here, the ALJ considered all of claimant's impairments and found claimant had two severe impairments: ADHD and dyslexia. (AR 19). Therefore, any error in omitting claimant's additional alleged impairments from the list of severe impairments at step two was harmless because step two was resolved in claimant's favor. *Toye v. Astrue*, No. C11-3035-MWB, 2012 WL 1969224, at *10 (N.D. Iowa June 1, 2012).

As previously noted, claimant argues that the error was not harmless, however, because "it is now impossible to tell what limitations the ALJ would have imposed had he properly" found these impairments to be severe. (Doc. 15, at 6). Claimant misapprehends the burden of proof; a claimant has the burden at Step Two to show that an error was not harmless by providing some indication that the ALJ would have decided the case differently had the error not occurred. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Here, although the ALJ did not find these other impairments to be severe, the ALJ nevertheless considered claimant's anxiety, learning difficulties, and ability to move about and manipulate objects. (AR 20–30). Claimant cannot show, given this record, that the ALJ would have decided the case differently had he labeled these additional impairments as severe.

---

[3] The Commissioner failed to note that she drew this language from a concurring opinion by Justice O'Connor.

Accordingly, I find the ALJ did not err by failing to include as severe other impairments with which claimant had been diagnosed at one time or another.

### B. *Whether the ALJ failed to find claimant had an extreme or marked limitation in three of the six domains*

Claimant argues the ALJ erred when he found claimant had less than marked limitations in three domains: (1) attending and completing tasks; (2) acquiring and using information; and (3) moving about and manipulating objects. (Doc. 15, at 6–20). Had the ALJ found claimant had at least a marked limitation in any two of these three domains, then claimant's limitations would have functionally equaled a listed impairment and claimant would be deemed disabled. Claimant argues the ALJ should have found that the evidence established that claimant had at least marked limitations in these domains. *Id*. Claimant does not challenge the ALJ's findings regarding the other three domains, and therefore waived that claim. *See Aulston v. Astrue*, 277 Fed. App'x 663, 664 (8th Cir. 2009) (holding that an undeveloped argument is waived).

The Commissioner generally argues that claimant is essentially asking the Court to reweigh the evidence and substitute its own judgment for that of the ALJ, instead of affording the ALJ proper deference. (Doc. 16, at 8). The Commissioner also argues that claimant's argument would require the Court to ignore the law. *Id*. Accordingly, the question before the Court is whether substantial evidence exists that would support the ALJ's finding that the limitations were less than marked.

#### 1. *Attending and Completing Tasks*

Claimant alleges he had extreme, or in the alternative at least marked, limitations in the domain of attending and completing tasks. (Doc. 15, at 6–13). Claimant argues, therefore, that the ALJ erred when he found claimant had a less than marked limitation in this domain.

The ALJ properly summarized the standard used to determine the extent of a limitation in this domain. (AR 24–25). The ALJ then analyzed the record regarding this

domain. The ALJ noted the observations of claimant's teachers and gave them all some weight. (AR 25). Generally, these teachers noted claimant had some difficulty with attention and completion of tasks, but that he was able to complete some assignments independently, could keep on track with some assignments, and demonstrated an ability to listen and follow directions. (AR 175, 218). Two of his teachers specifically opined that claimant had only a slight or "no problem" with attention and completing tasks. (AR 167, 189). Another teacher noted that claimant's performance, including his attention and completion of tasks, improved noticeably when she informed claimant that he may be held back a grade. (AR 177).

The ALJ also noted that claimant's teachers generally found his performance improved when he was taking his medication for ADHD. (AR 25, 187–203). The ALJ noted that this was consistent with evidence from medical records. (AR 21). My own review of the medical records indicated there is support for this conclusion. *See*, *e.g.*, (AR 409) (noting improvement in attention and concentration when claimant taking medication); (AR 421) (noting changes when claimant was not on medication); (AR 429) (reflecting maternal aunt's observation that claimant doing well on medication). An impairment cannot be considered a listed impairment if it can be controlled by medication. *See*, *e.g.*, *Briggs v. Callahan*, 139 F.3d 606, 609 (8th Cir. 1998) (finding denial of benefits supported when child's hyperactivity improved with medication and behavior was appropriate at school).

In his brief, claimant identified a number of observations by his teachers and medical providers, some of which reflect claimant having difficulty with attending and completing tasks. (Doc. 15, at 7–13). As noted, however, the court does not reweigh the evidence presented to the ALJ, or conduct a de novo review of the factual record. *Roe*, 92 F.3d at 675. I find that there is sufficient evidence in the record for the ALJ to have reasonably concluded that claimant's limitations in the domain of attention and completion of tasks did not rise to the level of being marked. Although claimant clearly

has some difficulty attending to and completing tasks, it was not unreasonable for the ALJ to conclude that it was not so great as to interfere seriously with claimant's ability to independently initiate, sustain, or complete activities. *See* C.F.R. § 416.926a(e)(2). If a court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). A court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins*, 648 F.3d at 897.

Accordingly, I find the ALJ did not err when the ALJ found claimant had less than marked limitations in the domain of attending and completing tasks.

### *2. Acquiring and Using Information*

Claimant alleges that the evidence in the record shows that he had a marked limitation in the domain of acquiring and using information. (Doc.15, at 13–18). Claimant argues, therefore, that the ALJ erred when he found claimant had a less than marked limitation in this domain. The Commissioner argues that the ALJ did not err and that the evidence in the record shows that, although claimant has some limitations in this domain, those limitations are not marked. (Doc. 16, at 11–16).

The ALJ properly summarized the standard used to determine the extent of a limitation in this domain. (AR 22–23). Generally speaking, in the domain of "acquiring and using information," an ALJ considers, among other things, how well a child acquires, learns, and uses information. 20 C.F.R. § 416.926a(g). The ALJ analyzed the record regarding this domain. The ALJ noted the observations of claimant's teachers and gave them all some weight. (AR 25). The ALJ noted that claimant had some difficulties in math, vocabulary, and writing, but that some of his performance problems occurred because he was not listening and was instead talking to friends. (AR 23, 217). Again, when a teacher mentioned to claimant the possibility of holding him back a grade, his performance improved markedly. (AR 24, 177). Overall, the ALJ noted that claimant

was making progress and his performance in the domain of acquiring and using information was not significantly discrepant from his peers. (AR 24, 166, 176, 187, 196–97). Finally, the ALJ again noted that claimant's teachers observed improvement in his performance when he was on his medication. (AR 23, 188).

The ALJ also considered the medical records as it pertains to this domain as well. (AR 21–22). The medical evidence corroborates the observations claimant's teachers made. Claimant's performance was not so deficient for him to qualify for the Iowa Individualized Education Plan program at his school. (AR 334). In April 2013, claimant took selected subtests of the Wechsler Intelligence Scale for Children, Fourth Edition, which resulted in scores indicating average verbal abilities and below average nonverbal abilities. (AR 335). Test scores also showed claimant had some difficulty with math and reading comprehension, consistent with his diagnosis of dyslexia and dyscalculia. (AR 336). Claimant was not on his medications when he took these tests. (AR 335). Dr. Bobbita Nag, M.D., opined on a number occasions between 2012 and January 2014, that claimant's intelligence functioning was in the average range. (AR 258–61, 268, 270, 273, 411, 413, 415, 419, 423, 425, 427, 429).

In arguing the ALJ erred, claimant summarizes essentially the same evidence and records and observations the ALJ discussed in his decision. (Doc. 15, 13–18). Claimant emphasizes that he was performing below his grade level in several subjects, like math and reading. The ALJ considered that evidence. (AR 21). Again, I find this to be an instance where claimant simply disagrees with the conclusion the ALJ reached from the evidence. I find that there was sufficient evidence in the record for the ALJ to have reasonably concluded that claimant's limitations in the domain of acquiring and using information did not rise to the level of being marked. It is not for this Court to reweigh the evidence presented to the ALJ or conduct a de novo review of the factual record. The Court may not reverse the Commissioner's decision even where there is some evidence to support the opposite conclusion.

Accordingly, I find the ALJ did not err when the ALJ found claimant had less than marked limitations in the domain of attending and completing tasks.

### 3. *Moving About and Manipulating Objects*

Claimant alleges that the evidence in the record shows that he had a marked limitation in the domain of moving about and manipulating objects. (Doc.15, at 18–20). Claimant argues, therefore, that the ALJ erred when he found claimant had a less than marked limitation in this domain. The Commissioner argues that the ALJ did not err and that the evidence in the record shows that, although claimant has some limitations in this domain, those limitations are not marked. (Doc. 16, at 8–10).

The ALJ properly summarized the standard used to determine the extent of a limitation in this domain. (AR 27). Generally speaking, in the domain of "moving about and manipulating objects," the ALJ considered claimant's ability to move his body from one place to another and how a child moves and manipulates objects—activities that may require gross and/or fine motor skills. (AR 27) (citing 20 C.F.R. § 416.926a(j)). The ALJ analyzed the record regarding this domain. The ALJ considered claimant's teachers' observations, to which he gave "weight," "some weight," and "considerable weight." (AR 27, 169, 220). The teachers uniformly observed no problems in this domain. (AR 27, 169, 220).

The ALJ considered the medical records as it pertains to this domain as well. (AR 21–22). In his summary of the medical evidence, the ALJ did not note any reference in impairments in claimant's ability to move about or manipulate objects. My own examination of the medical records fails to reveal evidence claimant had significant difficulty moving or manipulating objects, with one exception regarding a 2013 examination at the University of Iowa Hospitals and Clinics as described in the next paragraph. A July 2011 physical examination revealed that claimant's left hand was less coordinated than his right in an exercise simulating playing the piano, was slower on the right side in making rapid alternating movements, and reduced right one-leg standing

13

coordination. (AR 237–39). Despite these observations, claimant was able to perform all of the functions with full 5/5 muscle strength, symmetrical reflexes, and a normal gait. *Id*. An August 2011 examination showed normal gait and range of motion, no muscle weakness or reduced muscle tone, and intact and symmetrical reflexes. (AR 277–78). In April 2012, claimant was evaluated and found to have normal motor skills. (AR 251). September 2012 examinations showed normal range of motion and normal gait, with no reference to difficulties in movement or manipulation of objects. (AR 316–21). At the hearing, claimant's mother testified the only motor skill issues claimant had was "Just with writing. The way he holds his pencil is different. So his writing for an eleven-year-old is very sloppy and is very hard to read." (AR 441).

In arguing that the ALJ erred, claimant points to the examination performed by the University of Iowa Hospital and Clinics in April 2013. The examiners had claimant perform a number of exercises, including copying geometric objects with pen and paper and putting pegs into a grooved pegboard. (AR 336). These exercises showed claimant had difficulty with visual-motor integration and "significantly below average fine motor speed and dexterity" for both of his hands. *Id*. Although claimant asserts this is evidence his difficulties are more than two standard deviations below the norm (Doc. 15, at 20), there is nothing in the record to support that assertion. I cannot find, nor does claimant cite, any record indicating test results measuring more than two standard deviations below the norm. *Contrast Allen v. Colvin*, No. 4:16 CV 194 JMB, 2016 WL 7102723 at *5 (E.D. Mo. Dec. 6, 2016) (citing "evidence . . . from a Peabody Development Motor Scales Test" on which the claimant "achieved a fine motor quotient score of 64, which placed him in lower than the 1st percentile for his age group, and more than two standard deviations below the mean for fine motor skills.").

Again, I find this to be an instance where claimant simply disagrees with the conclusion the ALJ reached from the evidence. Although the University of Iowa examination indicates significant problems with claimant's fine motor skills, there is

insufficient evidence in this record showing that it was so significant to rise to the level of a marked impairment. This one-time examination also contrasts starkly with the rest of the medical and nonmedical evidence which did not identify any difficulty with claimant's motor skills.

Accordingly, I find the ALJ did not err when the ALJ found claimant had less than marked limitations in the domain of moving about and manipulating objects.

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 15th day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa